# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WALTER HEWITT ET AL.**                         **CIVIL ACTION**

**VERSUS**                                       **NO: 15-1197**

**NOBLE DRILLING US, LLC ET AL.**                **SECTION: "H"(5)**

## ORDER AND REASONS

Before the Court are Plaintiffs' Motion for Summary Judgment on seaman status (Doc. 47); Defendant Frank's International LLC's Motion for Summary Judgment on seaman status (Doc. 65); Defendant Noble Drilling U.S. LLC's Motion for Summary Judgment on seaman status (Doc. 67); and Defendant Shell Offshore Inc.'s Motion for Summary Judgment on seaman status (Doc. 92). For the following reasons, Plaintiffs' Motion is DENIED (Doc. 47), and Defendants' Motions are GRANTED (Docs. 65, 67, 92).

1

## BACKGROUND

Plaintiff Walter Hewitt alleges that he was a seaman working as a tong operator aboard a drilling vessel, the FRONTIER DRILLER,[1] when a gust of wind caused the lid of a tool box to close on his head, injuring him.  At the time, Plaintiff was employed by Defendant Frank's International, LLC ("Franks"). The FRONTIER DRILLER was owned by Defendant Noble Drilling U.S., LLC ("Noble") and operated by Defendant Shell Offshore, Inc. ("Shell").  Plaintiff alleges that the tool box lacked certain safety measures, specifically a hydraulic closure system, which would have prevented it from closing on his head.  He has brought claims under the Jones Act and general maritime law for unseaworthiness, maintenance and cure, and punitive damages for failure to pay maintenance and cure.  He has also brought a claim under 33 U.S.C. § 905(b) of the Longshore and Harbor Worker's Compensation Act.  Plaintiff's wife also brings a claim for loss of consortium.

Plaintiffs and Defendants dispute Plaintiff's status as a seaman, and all parties have filed motions for summary judgment regarding this issue.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]  A genuine issue

---

[1] Also referred to in briefings as the NOBLE DRILLER.
[2] Fed. R. Civ. P. 56(c) (2012).

of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7]  "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8]  Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

---

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[4] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).
[5] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).
[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).
[7] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[8] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[9] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

The issue before the Court is whether Plaintiff is a Jones Act seaman. Plaintiff argues that he meets the requirements of seaman status, while Defendants dispute this and seek dismissal of his Jones Act, unseaworthiness, and maintenance and cure claims.

"The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'"[10]   The Jones Act provides heightened legal protections to seamen because of their exposure to the inherent dangers of the high seas and was intended to provide remedial protections to sea-based maritime workers.[11]   The Act, however, does not provide a definition of a "seaman."[12]   Instead, the Supreme Court has promulgated two requirements for an employee to achieve seaman status.[13] First, "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission."[14]   Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."[15]

The parties do not dispute that Plaintiff meets the first prong of the test. However, Defendants argue that Plaintiff cannot meet the second prong of the seaman test because he cannot show a connection with a particular rig or fleet of rigs under common ownership.

---

[10] *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (quoting 46 U.S.C. § 688(a)).
[11] *Id.*
[12] *Id.* at 355.
[13] *Id.* at 368.
[14] *Id.* (internal quotations omitted).
[15] *Id.*

The fundamental purpose of the substantial connection requirement is "[t]o separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation."[16]  As a general rule of thumb, "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[17] This time must be spent on one particular vessel or an identifiable fleet of vessels.[18] "In deciding whether there is an identifiable group of vessels of relevance for a Jones Act seaman-status determination, the question is whether the vessels are subject to common ownership or control."[19] Defendants argue that Plaintiff did not work aboard a fleet under common control.

Plaintiff argues that the law does not require that he work aboard a fleet of vessels under common ownership or operational control in order to be classified as a seaman.  In support, Plaintiff cites to the Fifth Circuit's opinion in *Barrios v. Louisiana Construction Materials Co.*[20]  The Court finds, however, that this case fails to address the issue at hand.

In *Barrios*, the plaintiff worked on the same spud barge for about eight months prior to his injury, and the jury found that he had established a substantial connection with the barge such that he was a member of its crew.[21] The jury found the plaintiff's employer liable under the Jones Act but also

---

[16] *Id.*
[17] *Id.* at 371.
[18] *Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 557 (1997).
[19] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 376 (5th Cir. 2001).
[20] *Barrios v. Louisiana Const. Materials Co.*, 465 F.2d 1157 (5th Cir. 1972).
[21] *Id.* at 1163.

found that another company was the operator of the vessel and thus liable for its unseaworthiness.[22]  The issue before the Fifth Circuit was whether, to be held liable under the Jones Act, the Jones Act defendant had to operate the vessel to which the plaintiff was connected.[23]  The Fifth Circuit found that the plaintiff's employer need not have operational control over the barge to be held liable under the Jones Act.[24]

The issue here, however, is not whether Plaintiff's employer Franks had operational control over the FRONTIER DRILLER; but rather whether Plaintiff had a connection to a fleet of vessels that was under *anyone's* common operational control.  The cases cited by Plaintiff discuss seaman who alleged a connection to a single vessel and whether the Jones Act employer must have control over that vessel to be held liable.[25]  Plaintiff has not pointed this Court to any case law that calls into question the viability of the common ownership or operational control rule.  It is well settled that a seaman must have a connection to a vessel or fleet of vessels.[26]  Further, "a 'fleet' is not simply any group of vessels an employee happens to work aboard. It is a finite group of vessels under common ownership or control."[27]

Here, Plaintiff worked for Franks as a tong operator and member of the casing crew.  He testified that he worked two-to-three-week jobs aboard various rigs as assigned by Franks.  Plaintiff was employed with Franks from

---

[22] *Id.*

[23] *Id.*

[24] *Id.* at 1166.

[25] *Id.*; *Hurst v. Baker Hughes, Inc.*, No. 14-1819, 2015 WL 4397136 (E.D. La. July 16, 2015).

[26] *Chandris, Inc.*, 515 U.S. at 368.

[27] *Deshazo v. Baker Hughes Oilfield Operations, Inc.*, No. 99-2552, 2000 WL 798410, at *3 (E.D. La. June 19, 2000).

2009 through the day of the accident on April 29, 2012.  In that time, he had worked aboard upwards of 15 different vessels owned and operated by various different companies.[28]  In fact, Plaintiff testified that he has "been on just about every rig in the gulf."[29]

Plaintiff's situation is much more akin to the facts of *Deshazo v. Baker Hughes Oilfield Operations Inc.* in which the plaintiff was found not to have attained seaman status because he worked aboard four different rigs that were owned by three different companies and were not under common operational control.[30]  The court specifically noted that the nature of the plaintiff's job as a troubleshooter required that he be aboard multiple rigs owned by multiple parties on an as-needed basis.[31]  Likewise the Fifth Circuit has held that a plaintiff was not a seaman when she "performed approximately 32% of her work on fifteen different vessels owned by ten unrelated owners."[32]

Here too, Plaintiff's job as a member of a casing crew requires that he be aboard different vessels for short periods of time to assist customers of Franks. He does not dispute that he worked for two-and-three-week periods aboard multiple rigs owned by different companies at the direction of his employer. He also does not argue that those rigs were under common ownership or

---

[28] Docs. 65-5, 65-6.

[29] Doc. 65-10, p. 40.

[30] *Id.*

[31] *Id.* at 4.

[32] *Langston v. Schlumberger Offshore Servs., Inc.*, 809 F.2d 1192, 1194 (5th Cir. 1987); *see Cunningham v. Schlumberger Well Servs.,* 937 F. Supp. 570, 573 (W.D. La. 1996) ("[Plaintiff] did not have a connection to a vessel in navigation (or an identifiable group of vessels) that was substantial in terms of both its duration and nature. Like the plaintiffs in *Langston* (18 jobs, 15 vessels, 10 owners) and *Ardleigh* [*v. Schlumberger Ltd.*, 832 F.2d 933 (5th Cir.1987)] (40 jobs, 30 vessels, lacking common ownership) and *Lirette v. N.L. Sperry Sun, Inc.,* 831 F.2d 554 (5th Cir.1987) (4 years, 23 vessels lacking common ownership), the group of vessels that Cunningham worked aboard simply did not qualify as a fleet.").

operational control.  Accordingly, Plaintiff has failed to satisfy the second prong required to show seaman status.  This Court finds, therefore, that Plaintiff is not a seaman under the terms of the Jones Act.  Indeed, a court in the Western District of Louisiana previously held that a similar employee of Franks was not a seaman.[33]

Plaintiff next argues that the determination of seaman status is inappropriate at the summary judgment stage.  It is true that the Supreme Court has stated that "[t]he seaman inquiry is a mixed question of law and fact, and it is often inappropriate to take the question from the jury. Nevertheless, summary judgment or a directed verdict is mandated where the facts and law will reasonably support only one conclusion."[34]  This Court finds that the facts presented here are not in dispute and can lead to only one conclusion.  Plaintiff offers no material facts upon which a jury could find that he has the required connection with a fleet of vessels under common control or ownership.  The only conclusion warranted in this case is that Plaintiff is not a seaman.

Because Plaintiff is not a seaman, he is not entitled to bring a claim under the Jones Act.  In addition, he is not entitled to bring claims for

---

[33] *Burnham v. Ensco Offshore Co.*, No. 09-CV-1379, 2011 WL 3759761, at *3 (W.D. La. Aug. 25, 2011) ("[T]here is no evidence that he was assigned to a particular vessel or to a fleet of vessels under common ownership or control for more than 30% of the time that he was employed by Frank's Casing Crew. Accordingly, he cannot satisfy the test for seaman status prescribed by the United States Supreme Court and applied routinely by the Fifth Circuit.").

[34] *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (internal citations omitted).

unseaworthiness or maintenance and cure, as those remedies are reserved for seamen.[35]  Accordingly, those claims are dismissed.

## **CONCLUSION**

For the following reasons, Plaintiff's Motion is DENIED (Doc. 47), and Defendants' Motions are GRANTED (Docs. 65, 67, 92).  Plaintiff's claims under for Jones Act negligence, unseaworthiness, and maintenance and cure are DISMISSED WITH PREJUDICE.


New Orleans, Louisiana this 5th day of May, 2016.


_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[35] *See Willis v. McDonough Marine Serv.*, No. 14-811, 2015 WL 3824366, at *4 (E.D. La. June 18, 2015); *Chandris, Inc.*, 515 U.S. 347, 378 (1995).