## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WALTER HEWITT ET AL.**                    **CIVIL ACTION**

**VERSUS**                                              **NO: 15-1197**

**NOBLE DRILLING US, LLC ET AL.**          **SECTION: "H"(5)**

## ORDER AND REASONS

Before the Court are Defendant Shell Offshore Inc.'s Motion for Summary Judgment (Doc. 129) and Defendant Noble Drilling U.S. LLC's Motion for Summary Judgment (Doc. 131). For the following reasons, the Motions are GRANTED, and the claims against Movants are DISMISSED WITH PREJUDICE.

## BACKGROUND

Plaintiff Walter Hewitt filed this suit alleging that he was injured while working as a seaman aboard a drilling vessel, the FRONTIER DRILLER,[1]

---

[1] Also referred to in briefings as the NOBLE DRILLER.

1

when a gust of wind caused the lid of a tool box to close on his head. At the time, Plaintiff was employed as a member of a casing crew by Defendant Frank's International, LLC ("Franks"). The FRONTIER DRILLER was owned by Defendant Noble Drilling U.S., LLC ("Noble") and operated by Defendant Shell Offshore, Inc. ("Shell"). Plaintiff alleges that the tool box lacked certain safety measures, specifically a hydraulic closure system, which would have prevented it from closing on his head. In his Complaint, he brought claims under the Jones Act and general maritime law for unseaworthiness, maintenance and cure, and punitive damages for failure to pay maintenance and cure. He has also brought a claim under 33 U.S.C. § 905(b) of the Longshore and Harbor Worker's Compensation Act ("LHWCA"). On May 5, 2016, this Court granted Defendants' Motions for Summary Judgment, holding that Plaintiff is not a seaman and dismissing his claims under the Jones Act and the general maritime law. Only Plaintiff's LHWCA claim remains. Defendants Shell and Noble have filed motions for summary judgment seeking the dismissal of Plaintiff's final claim.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue

---

[2] Fed. R. Civ. P. 56(c) (2012).

of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7]  "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8]  Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

---

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).

[5] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[7] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[8] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[9] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

Under 33 U.S.C. § 905(b) of the LHWCA, an injured worker may bring a claim against a vessel owner for vessel negligence.  Plaintiff has brought an LHWCA claim against Noble as owner of the FRONTIER DRILLER and Shell as the operator.  In their separate motions, Noble and Shell argue that they cannot be held liable for Plaintiff's injury under the LHWCA because they did not own or control the tool box that caused the injury or have a duty to inspect or supervise the work done by Franks.  It is undisputed that the tool box was constructed, owned, and utilized by Franks in its casing work aboard the FRONTIER DRILLER.  Franks had constructed and shipped the box to be loaded aboard the vessel prior to beginning its work.  Plaintiff alleges, however, that because the toolbox was incorporated as part of the vessel, it was a defective appurtenance causing the vessel to be unsafe.  Plaintiff alleges that Defendants Noble and Shell should be liable for this hazardous condition.

Movants rely on the Supreme Court's opinion in *Scindia Stream Nav. Co. v. De Los Santos*, which sets forth the three duties of a vessel owner, to argue that they did not breach a duty to Plaintiff.[10]  In *Scindia*, an employee of a stevedoring company was injured while loading cargo onto a vessel owned by Scindia.[11]  The Court held that a vessel owner has three duties to a longshoreman:  (1) the duty to turn over a reasonably safe vessel, (2) the duty to protect against hazards if the vessel is left in the owner's active control, and (3) the duty to intervene to prevent use of an unsafe practice if the vessel owner is aware that it is being undertaken.[12]  The Court held that the vessel owner

---

[10] *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156 (1981).
[11] *Id.* at 159.
[12] *Id.* at 167–78.

has the duty to exercise due care under the circumstances.[13]  Movants allege that they did not breach any of these duties to Plaintiff and thus cannot be held liable under the LHWCA.

Plaintiff contends that the *Scindia* duties do not apply to this case because Plaintiff was not engaged in the traditional stevedoring operations of loading and unloading.  To be sure, Plaintiff was part of a casing crew hired to install and remove casing aboard off-shore drilling rigs, such as the FRONTIER DRILLER.  Plaintiff has not, however, provided this Court with any case law to support this position, nor could this Court find any.  Indeed, the Fifth Circuit has explicitly held that "although *Scindia* arose in the context of stevedoring operations, the duties it enumerates are not limited to stevedores."[14]  "[I]t [is] clear that the rationale of *Scindia* applies equally to questions of vessel owner liability for injuries to LHWCA-covered employees of an independent contractor working aboard the vessel."[15]  Accordingly, this Court will apply the *Scindia* duties to the case at hand.

   a. *Turnover Duty*

First, *Scindia* states that the vessel owner has a duty to exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced [contractor] will be able by the exercise of reasonable care to carry on its [] operations with reasonable safety to persons and property."[16]  Movants allege that they did not breach this duty because they did not own the injury-causing equipment.  Plaintiff does not

---

[13] *Id.* at 166–67.

[14] *Levene v. Pintail Enterprises, Inc.*, 943 F.2d 528, 533 (5th Cir. 1991).

[15] *Lormand v. Superior Oil Co.*, 845 F.2d 536, 541 (5th Cir. 1987).

[16] *Scindia*, 451 U.S. at 167.

dispute that the tool box belonged to his employer Franks and was brought aboard the vessel by Franks.

The turnover duty also requires that the vessel owner alert the contractor of "any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care."[17]   Movants allege that they did not breach this duty because even Franks' crew was unaware of the defect in the tool box until after the accident, and therefore Movants had no way of knowing of the hazard.  Plaintiff offers no facts that dispute this point.  Accordingly, Movants did not breach the turnover duty.

### b. Active Control Duty

Next, *Scindia* states that a vessel owner may be held liable if it actively involves itself in the contractor's operations and is negligent in harming a longshoreman.[18]  Plaintiff makes conclusory statements alleging that Movants "owned and exercised control over and upon the work station which Plaintiff discharged his duties," however, his deposition testimony paints a different story.  Plaintiff testified that Franks controls the work it performs aboard the vessel and that Franks' work is its "show."  Plaintiff does not offer any evidence contradicting the fact that Franks was in control of the casing operation at the time of the injury.  Accordingly, Movants cannot be liable for breaching the active control duty.

---

[17] *Id.*

[18] *Id.*

### c. Duty to Intervene

Finally, *Scindia* requires that a vessel owner intervene in the contractor's operations if it has actual knowledge of a danger that it anticipates the contractor cannot or will not correct.[19]  Again, it is undisputed that neither Franks' crew nor the crews of Noble or Shell were aware that the tool box was lacking the appropriate safety device.  Plaintiff argues, however, that the tool box was a "defective appurtenance of the vessel," which rendered the vessel, under Movants' charge, unsafe.  The Fifth Circuit has held, however, that the mere presence of a danger on board is insufficient to create a duty to intervene.[20]  "Once . . . repair operations have begun, it is the [contractor], not the shipowner, who assumes the responsibility for the safety of its employees."[21]  Accordingly, Movants did not breach the duty to intervene.

As outlined above, Movants did not breach any of the three duties that they owed to Plaintiff as owners and operators of the vessel aboard which he was injured.  Therefore, they cannot be liable for negligence under § 905(b) of the LHWCA.

---

[19] *Id.* at 178.

[20] *See Futo v. Lykes Bros. S.S. Co.*, 742 F.2d 209, 215–16 (5th Cir. 1984).

[21] *Id.*

## <u>CONCLUSION</u>

For the foregoing reasons, the Motions for Summary Judgment are GRANTED, and Plaintiffs' LHWCA claims against Movants Shell Offshore and Noble Drilling are DISMISSED WITH PREJUDICE.


New Orleans, Louisiana this 5th day of May, 2016.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

8